Plaintiff, E. Levy, operating under the trade name of E. Levy and Company, instituted this suit against Newton S. Cappel, doing business as Independent Oil Company, to recover judgment for $349.68 allegedly due for labor and material furnished under a contract whereby plaintiff agreed and obligated himself to rewire for electricity the offices and warehouse of the defendant, which had been partially destroyed by fire. To an amended petition, plaintiff attached and filed an itemized account that discloses the kinds and quantity of material furnished to complete the rewiring and a charge in globo for labor. It is alleged that the contract between the parties "was oral and the price was to be based upon the labor and material entering into said job"; that during the progress of the work the said Cappel "made additions" which increased the amount of labor and material beyond what was originally contemplated.
Defendant opposes the suit to the extent of $108.13. He alleged that he and plaintiff's superintendent, William J. Keating, entered into an oral agreement for the re-wiring of his offices and warehouse, whereby plaintiff was obligated to furnish all material and labor therefor for a price not over $200.00; and, also agreed to provide two fluorescent lights at an estimated price of $40.00, in addition to said $200.00. The cost of these fixtures, as charged in the account, is $41.55, about which there is no question. This amount added to the alleged contract price of $200.00 makes an indebtedness of $241.55, which defendant admits he owes.
Defendant also alleged that at his request Keating came to the warehouse not many days after the fire, for the purpose of looking it over in order to be in a position to intelligently estimate the cost of re-wiring it in accordance with defendant's desires; that Keating closely looked over the situation, took measurements where necessary, after being fully informed *Page 129 
by defendant concerning the lines of wires, outlets, switches, etc., desired by him, and he then submitted said price; that the completed wiring was in strict conformity with the understanding reached between him and Keating. Defendant also alleges that the contract was to no extent nor in any manner changed, altered, or added to on his part. He further alleges that after the work was completed he offered to pay defendant for same on the basis of the price made to him but that the offer was refused. After suit was filed defendant tendered to plaintiff the sum of $241.55, plus accrued court costs, which was refused.
There was judgment for plaintiff as by him prayed, from which defendant appealed.
The warehouse was not ceiled. The wiring is referred to as open work, which means that the wires, switches, outlets, etc., were all exposed. The two offices, it appears, were ceiled but tops thereof were open. We mention these facts because it is clear therefrom that the wiring work was not of a complicated character and there should have been no difficulty in easily determining the number and routes of the lines of wires, the number of outlets, switches, etc.
Mr. Keating testified that the agreement between him and defendant was to this effect: that the warehouse and offices would be re-wired exactly as they were wired prior to the time of the fire and at a cost not to exceed $200.00. He also testified that as the work progressed, defendant added outlets not in the building originally, and required the electrician, who was doing the work, to make changes in the wiring not originally included in the agreement. However, the itemized account sued upon does not segregate the two classes of work, to-wit: that included in the price of $200.00, according to Keating, and that allegedly done in excess of that for which said amount paid. Keating also testified that outlets to the number of ten or twelve, in excess of the number originally contemplated, at defendant's request, were installed and that outlets of this kind cost around $10.00 each. He stated that the cost of electrical wiring is generally based upon the number of outlets. The account shows a total of possibly twenty-six (26) outlets charged.
Mr. L. C. Martin, an electrician, did the wiring for plaintiff. He had no knowledge of the details of the contract between the parties, but testified that Keating delivered to him "a sheet with a sketch on it, showing some outlets down the building". He also testified that Keating, in regard to the sketch, said: "That will be approximately what it is, but you go down there and put in what Mr. Cappel wants", and that he did this. This testimony, in a measure, supports rather than detracts from defendant's position in the case. It shows that Mr. Keating did not consider the sketch complete as to extent and details of the work and that after all Cappel was looked to to provide the details concerning which the sketch was incomplete. This testimony clearly implies that there was a meeting of minds as between defendant and Keating with respect to the details of the work, all of which was not reflected from the sketch, and that Cappel was expected to provide Martin with the additional details. From this witness' testimony it seems fairly clear that the work could not have been completed, even on the basis of plaintiff's contention, without defendant's aid and information.
Martin testified that defendant directed him to make provision for two or three lights near the end of the warehouse, next to the office, after the wiring thereabout had been completed. In complying with this request, he says it was necessary to cut the conduit in one or more places. This is denied positively by defendant and his wife.
Defendant's own testimony supports the allegations of fact set up in his answer. He testified that the wiring job was completed in conformity to the contract between him and Keating, acting for the plaintiff; that he and Keating went over the building, made measurements, and it was definitely determined between them the exact location of every outlet, etc.; that it was not the agreement that the rewiring should be a reproduction of the old system; that while Mr. Martin frequently *Page 130 
consulted with him with respect to some details of the work, at no time did he ask Martin to do any work not comprehended within the purview of the agreement with Keating. He is certain the two outlets necessary for installation of an attic fan, not in the building prior to the fire, were included in the agreement and to strengthen his testimony on this score, he and his wife both testified that the location of the fan was suggested by Keating, who also agreed to hold for them a fan he then had on hand.
Defendant was charged with new wire and labor to install same, which extended from the warehouse to an old pump of some sort, some distance therefrom. Defendant is positive this work was not mentioned between him and Keating and is certain it was not authorized by him to be done. The pump was not in use and had not been for some eight years. No good reason appears why it would be desired to have new wire run to it. These wires were not injured by the fire but to some extent insulation thereon had been destroyed from exposure to weather. Mr. Martin did not testify that defendant or his wife authorized him to do this work.
Mrs. Cappel was present in the office at the time Keating and defendant surveyed the situation and while she did not hear all of the discussions, between them, she did hear what was said by them after making said survey and returning to the office. She is positive that at this time and place Keating told the defendant that the completed work would not cost more than $200.00. She was present almost continuously while Martin was doing the wiring and is certain that neither she nor the defendant requested or directed him to install outlets, etc., not comprehended within the terms of the agreement as they understood it.
No good reason appears, and none has been suggested, why the defendant would have overlooked, in his discussions with Keating, a dozen outlets necessary to his lighting system. Surely it would have been most extraordinary that in a contract so small in volume as this one, an increase in outlets of nearly one hundred per cent would have been found necessary, and especially so after the parties had closely inspected the building and offices for the very purpose of determining fully the volume of the work in order to arrive at a fair estimate at which it could be done.
We are of the opinion that plaintiff has not discharged the burden of proof with respect to the alleged extra work. We think the testimony of Mr. Martin very significant. It materially supports the position and contention of the defendant and is sufficient in probative weight to turn the scales in his favor.
For the reasons herein given, the judgment from which appealed, is amended by reducing the principal amount thereof to Two Hundred Forty-One and 55/100 ($241.55) Dollars, and as thus amended the judgment is affirmed. Defendant is cast for all costs that accrued subsequent to the making of said tender.
 On Application for Rehearing